UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JENNIFER L. McGHAN,                    )
                                       )
        Plaintiff,                     )        Case No. 1:08-cv-1113
                                       )
v.                                     )        Honorable Robert Holmes Bell
                                       )
KALKASKA COUNTY DEPARTMENT             )
OF HUMAN SERVICES, *et al.*,           )
                                       )        **REPORT AND RECOMMENDATION**
        Defendants.                    )
_____)

        This is a civil action brought *pro se* by Jennifer McGhan[1] under 42 U.S.C. §§ 1983,

1985, and 1986, arising from a custody dispute over plaintiff's children, minors S. N. Bonds and J.

L. Bonds.  The seven defendants plaintiff named in her complaint, in addition to her former husband

Christopher Bonds, are as follows:

    1.      Daryl Johnston, "an attorney employed by the Rosi & Gardner law firm, retained by

            [d]efendant Christopher M. Bonds" (Compl., ¶ 16);

    2.      Judge Lynne Buday, a judge of the "46th Circuit Trial Court in Kalkaska County,

            Michigan" (*Id.*, ¶ 14);

_____

        [1] The names of minors S. N. Bonds and J. L. Bonds appear in the complaint as plaintiffs.
(Compl., ¶¶ 8, 9, docket # 1).  Plaintiff Jennifer McGhan is not an attorney and she cannot bring any
claim on behalf of the two minors.  The law is well established that as *pro se* litigants may not act
in a representative capacity and are limited to representing themselves on their own claims.  *See* 28
U.S.C. § 1654; *accord Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 522
(2007).  Therefore, no claim by either minor is properly before the court in this lawsuit.

3.      Mark Holston, a "Referee for the 46th Circuit Trial Court in Kalkaska County" (*Id.*, ¶ 15);

4.      Peter Shumar, "a private-practice attorney appointed by the 46th Circuit Trial Court . . . as the guardian-ad-litem" for S. N. Bonds (born in 2001) and J. L. Bonds (born in 2004) (*Id.*, ¶¶ 17, 28);

5.      Kalkaska County Department of Human Services (*Id.*, ¶ 11);

6.      Mindy Czinder, "a caseworker employed by the State of Michigan" in the Kalkaska County Department of Human Services (*Id.*, ¶ 12); and

7.      Kris Lagois, "a supervisor employed by the State of Michigan" in the Kalkaska County Department of Human Services (*Id.*, ¶ 13).

Plaintiff's complaint is 367 paragraphs long and spans sixty-five pages, not including the additional seventy-eight pages of transcripts from Kalkaska County Circuit Court proceedings attached as exhibits.  The complaint is divided into thirteen numbered counts:

1.      Violation of Michigan Court Rule 2.114 by defendants Christopher Bonds and Attorney Daryl Johnson (Compl., ¶¶ 238-50);

2.      Violations of the Uniform Child Custody Jurisdiction Enforcement Act, Mich. Comp. Laws §§ 722.1201 *et seq.* by Judge Buday, Referee Holston, Attorney Johnson, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 251-57);

3.      "Gross negligence by the Kalkaska County Department of Human Services" against defendants "Czinder, Lagois, and the Kalkaska County Department of Human Services" (*Id.,* ¶¶ 258-73);

4.      Violation of the Fourteenth Amendment's Due Process Clause and 42 U.S.C. § 1985 by Judge Buday, Referee Holston, Christopher Bonds, Attorney Johnson, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 274-86);

-2-

5.      "Malicious prosecution and seizure in violation of § 1983 and the Fourth Amendment" by defendants Christopher Bonds, Attorney Johnson, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 287-97);

6.      "Misrepresentation and fabrication of evidence in violation of 42 U.S.C. § 1985 and 42 U.S.C. § 1986" by Judge Buday, Referee Holston, Christopher Bonds; Attorney Johnson, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 298-304);

7.      "Malfeasance" in violation of Mich. Comp. Laws § 712A.17d against Referee Holston and Guardian Ad Litem Peter Shumar (Compl., ¶¶ 305-14);

8.      "Conspiracy and wrongful deprivation of custody in violation of 42 U.S.C. § 1985" against Judge Buday, Referee Holston, Christopher Bonds; Attorney Johnson, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 315-22);

9.      Violation of 42 U.S.C. § 1983 by Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 323-28);

10.     "Supervisory violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1986" by Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (Compl., ¶¶ 329-38);

11.     Intentional infliction of emotional distress by Judge Buday, Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (*Id.*, ¶¶ 339-49);

12.     Negligent infliction of emotional distress against defendants Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (*Id.*, ¶¶ 350-60).

13.     "Negligent supervision, hiring, training, discipline, and retention by [the] Kalkaska County Department of Human Services" against defendants Caseworker Czinder, Supervisor Lagois, and the Kalkaska Department of Human Services (*Id.*, ¶¶ 361-66).

Counts 4, 5, 6, 8, 9, and 10 purport to assert federal claims. Plaintiff invokes diversity and supplemental jurisdiction on her state-law claims. (*Id.*, ¶ 22). She seeks an award of monetary damages and injunctive relief. (*Id.*, ¶ 367).

-3-

The matter is before me on a Rule 12(b)(6) motion to dismiss by defendants Czinder, Lagois, Buday, Holston, and the Kalkaska County Department of Human Services (docket # 12); a Rule 12(b)(6) motion by defendant Shumar (docket # 40); and a Rule 12(b)(6) motion to dismiss and for Rule 11 sanctions by defendant Christopher M. Bonds (docket # 30).   Plaintiff opposes defendants' motions. (docket #'s 32, 44, 46).   For the reasons set forth herein, I recommend that the defendants' motions to dismiss be granted on all plaintiff's claims.   I further recommend that all plaintiff's claims against Attorney Johnson be dismissed on initial screening under 28 U.S.C. § 1915(e)(2) for failure to state a claim.[2]   Finally, I recommend that Christopher Bonds's motion for Rule 11 sanctions be denied because he did not comply with the "safe harbor" requirements of Rule 11 of the Federal Rules of Civil Procedure.

## **Applicable Standards**

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   Under Rule 8(a)(2) of the Federal Rules of Civil Procedure a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and FED. R. CIV. P. 8(a)(2)).   While this notice pleading standard does require not require "detailed" factual allegations, it does require more than the bare assertion of legal conclusions.   *See Twombly*, 550 U.S. at 555.   "[C]ourts 'are not

---

[2]On December 3, 2008, the court entered its order allowing plaintiff to proceed *in forma pauperis*.   (docket # 4).   Thus, plaintiff's complaint is subject to initial screening under 28 U.S.C. § 1915(e)(2).   *See Leirer v. Ohio Bureau of Motor Vehicle Compliance Unit*, 246 F. App'x 372, 373 (6th Cir. 2007).

-4-

bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555.  Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, No. 07-1015, __ U.S. __, 2009 WL 1361536, at * 12 (U.S. May 18, 2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 2009 WL 1361536, at * 12 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 2009 WL 1361536, at * 12 (quoting *Twombly*, 550 U.S. at 557).

Generally, when considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.  *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 2009 WL 1361536, at * 13.  Claims survive a Rule 12(b)(6) motion only where the "factual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555.

The Supreme Court's recent decision in *Iqbal* emphasized that a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

2009 WL 1361536, at * 12. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." *Iqbal*, 2009 WL 1361536, at * 13 (quoting FED. R. CIV. P. 8(a)(2))(internal citations omitted).

In evaluating a motion to dismiss, a court generally is limited to the complaint and the exhibits attached thereto. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Plaintiff attached numerous exhibits to her complaint, and the court is free to consider such exhibits without converting defendants' motions into summary judgment motions. *See* FED. R. CIV. P. 10(c); *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603-04 (6th Cir. 2005); *Amini*, 259 F.3d at 502 ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008); *Bariteau v. PNC Fin. Servs. Group, Inc.*, 285 F. App'x 218, 220 (6th Cir. 2008)("[I]n reviewing a Rule 12(b)(6) dismissal, we generally restrict ourselves to the allegations in the

complaint with two exceptions: (1) matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint and (2) documents that a defendant attaches to a motion to dismiss if they are referred to in plaintiff's complaint and are central to her claim.").

### Plaintiff's Allegations

Jennifer McGhan and Christopher Bonds were married in Florida in 1999.  (Compl., ¶ 25).  On May 22, 2006, they were divorced in Camden County, Georgia.  (¶ 26).  The couple had two children: S. N. Bonds born in 2001 and J. L. Bonds born in 2004.  (¶¶ 7-9, 28).  In May of 2006, Christopher Bonds filed a complaint with the Camden County Georgia Department of Family and Children's Services accusing Jennifer McGhan of child neglect.  (¶ 31).  Plaintiff states that the neglect charges were false.  (¶ 31).  On May 24, 2006, representatives of that department visited McGhan's home to investigate the complaint.  (¶ 32).  Approximately two weeks later, on June 6, 2006, Jennifer McGhan "temporarily relocated" to Michigan, taking the two minor children with her. (¶¶ 30, 33).  Their initial Michigan residence was in Grand Traverse County, but by August of 2006 they had moved in with Ms. Amanda Moore in Kalkaska County.  (¶¶ 33, 36-37).

On October 5, 2006, through his attorney Daryl Johnson, Christopher Bonds filed a motion in Kalkaska County Circuit Court seeking a temporary restraining order preventing Jennifer (Bonds) McGhan from removing their children from Kalkaska County.  (¶ 41).  Plaintiff states that various portions of this state-court motion were inaccurate and deficient.  (¶¶ 41-46).

On October 17, 2006, the Kalkaska Police Department received a complaint concerning danger to the health and safety of two very young children.  (¶ 53).  The children were eighteen-month-old E. Moore and two-year-old J. L. Bonds.  (¶¶ 53, 57).  Police contacted the

Kalkaska County Department of Human Services.  Child Protective Services Worker Mindy Cizner was assigned to investigate this complaint.  (¶ 55).  E. Moore, Amanda Moore's child, had been left in the care of her boyfriend, Ed Cortez, while she was away at work.  Plaintiff states that on October 17, 2006, she was ill and emotionally distraught following the death of an uncle.  After she took S. Bonds to school, she returned to the Kalkaska residence and fell asleep on the couch.  (¶¶ 49-52). J. L. Bonds and E. Moore ended up outdoors without any supervision.  Mr. Cortez awakened plaintiff at some time after the police had arrived.  (¶ 53).  Ms. Czinder arrived to investigate the complaint.  She informed plaintiff that she was fortunate that her daughter had not been run over by a truck and killed.  Czinder demanded that the residence be cleaned up.  It is undisputed that the home was a mess at the time the police and Ms. Czinder arrived.  (¶¶ 55-59).

On October 18, 2006, plaintiff was personally served by the sheriff with a copy of her husband's motion for a temporary restraining order and a notice that a hearing was scheduled for November 1, 2006, before Judge Lynne M. Buday in the "46th Circuit Trial Court-Family Division of Kalkaska County, Michigan."  (¶ 61).  Plaintiff attached a copy of the hearing transcript (HT) as an exhibit to her complaint.  (docket # 1, Ex. 1, *Christopher Bonds v. Jennifer Bonds*, Case No. 06-927-UM).  An ex parte order had been entered before the hearing, and the purpose of the November 1, 2006 hearing was to show cause why a preliminary injunction should not be issued on the same terms.  (HT, 3).  Mindy Czinder and Amanda Moore were subpoenaed to testify at this hearing.  (¶ 65).  Christopher Bonds was represented by Attorney Daryl Johnson.  Jennifer Bonds appeared *pro se*.  In response to Judge Buday's inquiry, plaintiff confirmed that she intended to take the children from Michigan and travel to Georgia.  (HT, 4).  Plaintiff objected to any mention of the ongoing child protective services investigation.  Judge Buday overruled plaintiff's objection.  She advised

plaintiff that she was not going to allow plaintiff to take the children and take off to another state, especially when there was an ongoing protective services investigation.  (HT, 8-9, 14-15, 20; Complaint ¶¶ 66-71).  Plaintiff's complaint expresses her dissatisfaction with arguments made by her former husband's attorney (¶¶ 73, 74, 85), statements made in court by Ms. Czinder to Judge Buday informing the court that two-year-old J. L. Bonds had been found in the road on October 17, 2006, had nearly been struck and killed by a beer truck, and that the home where J. L. Bonds had been staying was found in a filthy and disgusting condition.  (¶¶ 77-79, 82, 86, 95).  Plaintiff's complaint emphasizes her dissatisfaction with Judge Buday's rulings.  (¶¶ 75-77, 81, 84, 87-94). Judge Buday ordered that the children be temporarily placed in their father's custody.  A hearing on plaintiff's parental neglect petition was set for the next day.  (¶ 96).  Shortly after the November 1, 2006 court proceedings had concluded, plaintiff confronted Ms. Czinder in her office at the Kalkaska Department of Social Services.  Plaintiff was asked to leave the office after she accused Czinder of lying in court.  (¶¶ 98-105).

On November 2, 2006, a Preliminary Hearing (PH) was held in Kalkaska County Circuit Court before Referee Mark Holston in the case of *In re S. Bonds & J. Bonds*, No. 06-3865-NA.  The petition for temporary removal was read into the record and it stated, in part, as follows:

On October 17, 2006, Officer Glen Artress responded to Pik-Wik (phonetically) store due to Melissa Flory['s] report[] that two children were found playing in the rain next to the store.  The children were not properly clothed.  The children had no shoes or socks on their feet.  They had no jackets on.  The children's feet were red and swollen.  The children were outside at least a half hour without supervision.  The children were observed to be very dirty.

On October 17, 2006, Officer Artress responded to 318 Pine Street, where it was thought that the children lived.  The home was found to be very dirty and not in living condition for children.  This petitioner removed the children from the home and placed them with the other child's biological father, Eric Moore.

(PH, 4-5).  Mindy Czinder clarified that J. L. Bonds had been playing outside the store with E. Moore.  (PH, 5).  The petition provided the following additional details regarding events that occurred on and after October 17, 2006:

> On October 17, 2006, Jennifer Bonds agreed to work with the Family Support Program.  On November 1st, 2006, Laura Allen -- Lauren Allen, with the Family Support Program, reported that she had tried to contact Jennifer Bonds on two occasions, 10-26 and 10-31.
>
> On November 1st, 2006, Lauren Allen reported that she had not heard back from Jennifer Bonds.  On November 1st, 2006, it was reported to this petitioner Jennifer Bonds's protective services history in Georgia for the condition of her home.

(PH, 5).  Mindy Czinder testified that she was a child protective services investigator for the Department of Human Services.  She had received a referral and investigated allegations regarding Jennifer Bonds, the mother of J. L. Bonds and S. N. Bonds.  (PH, 8).  When Hearing Officer Holston inquired regarding what Czinder's investigation had revealed, Czinder testified as follows in response:

> A.  On October 17th, J[.] Bonds, two years old, and another less than two-year-old [E. Moore], were found on the highway out in front of the Pik-Wik store [and they were] not properly clothed.  Both almost got hit by a beer truck that did not see them in the road.  The people who were working at the store did not know who these kids were. They ended up calling law enforcement, which in turn called for protective services. The kids were dirty, filthy.  The store [sic] said that they had been outside for at least half an hour without supervision.
>
> Then after we established where the children lived, the mom, Jennifer Bonds, and the boyfriend of the home [sic], the other parent in the home, had stated that they had been sleeping, that they hadn't even known that the children were outside the house at that time.
>
> While entering the home -- upon entering the home, I should say, the home was found to be filthy and extremely dirty and no place for kids at this age to be living.

(PH, 8-9).  Ms. Czinder recommended that the children be placed with their father.  (¶ 112).  Referee Holston agreed with her recommendation.  (¶¶ 114-18).

On November 6, 2006, Attorney Johnson filed a motion on Mr. Bonds's behalf seeking modification of custody, support and parenting time.  (¶ 124).  On November 9, 2006, Judge Buday entered an order temporarily modifying custody, support and parenting time.  Christopher Bonds was granted temporary custody of the children and his support obligation was suspended as of November 1, 2006.  (¶¶ 128-29).

On November 14, 2006, Referee Holston conducted a second preliminary hearing (PH2).  (docket # 1, Ex. 3).  Assistant Prosecuting Attorney Alec J. Chabalowski represented the petitioner.  Plaintiff was represented by Attorney Thomas Seger.  Plaintiff acknowledged that she had read the petition and that she understood it.  (PH2, 4).  Plaintiff stipulated that there was probable cause that one or more of the allegations in the petition were true (PH2, 4).  Ms. Czinder was called as a witness.  She testified that the children had been placed with their father and that she recommended continued placement with Christopher Bonds.  (PH2, 5-6).  She further recommend that visitation take place in Ohio where Christopher Bonds lived and that plaintiff's visits with the children be supervised.  (PH2, 6).  Supervised visitation was recommended because, among other things, plaintiff had expressed her intent to take the children and move to Georgia.  (PH2, 6-7).  Referee Holston related on the record that Peter Shumar, the guardian ad litem, had expressed his intent to support this recommendation by the Department of Human Services.  (PH2, 8).  Referee Holston continued the placement of the children with their father.  Plaintiff was to receive visitation at the discretion of the Department of Human Services.  (PH2, 9).

-11-

Plaintiff alleges that after the November 14, 2006 hearing, she went to the Office of the Kalkaska Department of Human Services to confront Ms. Czinder's supervisor, Ms. Kris Lagois. (¶ 142).   Plaintiff complains that Ms. Lagois kept her waiting in a back room for 45 minutes. Plaintiff told Lagois about "all the false statements that Czinder ha[d] said to the court." (¶ 145). Lagois responded that she would discuss these purported inaccuracies with Ms. Czinder. (¶ 146). At a November 17, 2006 meeting with Lagois, plaintiff again tried to persuade Lagois that Czinder's testimony had been false. (¶¶ 149-50).   Plaintiff was not satisfied with Lagois's response, which emphasized that the court had ordered the removal of the children. (¶¶ 150-57). On November 29, 2006, Ms. Lagois denied plaintiff's request to have a new caseworker assigned to her case. (¶ 164). On December 12, 2006, plaintiff's attorney filed a motion to have a new caseworker assigned.  On December 19, 2006, this motion was denied.  (¶¶ 168-69).

Plaintiff states that during a status conference, Judge Buday indicated she would issue a temporary custody order that would provide Mr. Bonds with an opportunity to seek relief from the Ohio or Georgia courts.  Judge Buday indicated that plaintiff would not be able to take the children and move wherever she wanted with them. (¶¶ 160-61).  On March 26, 2007, Christopher Bonds, through Attorney Pamela Houston, filed an action in the Ashtabula, Ohio Court of Common Pleas regarding custody of the children, case no. 07JH15. (¶ 177).  This case was dismissed by an Ohio magistrate on August 29, 2007. (¶ 187).  On August 31, 2007, Christopher Bonds filed an objection to the magistrate's decision. (¶ 191).

On September 12, 2007, Judge Buday conducted a status conference in case number 06-9297-UM.  (Status Conference (SC), docket # 1, Ex. 4).  Attorney Darryl Johnson represented Christopher Bonds.  Plaintiff was represented by Attorney Shelly A. Kester.  Judge Buday related

that a temporary order modifying custody, support and parenting time had been entered.  The children were in the temporary custody of their father on the basis of the neglect case that had been filed in Kalkaska County, No. 06-3865-NA.  (SC, 3).  Plaintiff was found to be unfit to have the children in her custody.  (SC, 4).  Christopher Bonds lived in Ohio and returned there with the children.  The court had anticipated that Mr. Bonds would be able to follow through with the Ohio courts regarding the custody of the children.  The court in Ashtabula County, Ohio, however, declined to exercise jurisdiction because the Michigan court continued to exercise jurisdiction.  (SC, 4).

On October 2, 2007, plaintiff filed a written request for a copy of the child protective services case file.  She received a copy of the file on the same day.  Upon review of the case file, plaintiff observed that her name had been placed on the central registry.  (¶ 217).  On October 8, 2007, plaintiff filed a request asking that her name be expunged from the central registry.  (¶ 219).  On October 17, 2007, defendant Lagois sent plaintiff a copy of the Department of Human Services' notice that plaintiff's request had been denied.  (¶ 227).  Plaintiff requested an administrative hearing.  (¶ 228).  Plaintiff's administrative hearing was scheduled for June 2008.  (¶ 235).  Her complaint is devoid of any allegations regarding the outcome of the administrative hearing.  On November 28, 2008, plaintiff filed this lawsuit.

## Discussion

### I.   Jurisdiction

Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

375, 377 (1994); *see United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 510 (6th Cir. 2009).  Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).  The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold question.").  Plaintiff has the burden of proving this court's jurisdiction.  *See Giesse v. Secretary of Dep't of Health & Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008); *Walburn v. Lockheed Martin* Corp., 431 F.3d 966, 970 (6th Cir. 2005).

For nearly a century and a half, the Supreme Court has held that the federal courts lack jurisdiction over questions of divorce, alimony, or child custody.  *See Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858).  "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981).  Questions of divorce are within the exclusive province of the state courts.  *McLaughlin v. Cotner*, 193 F.3d 410, 412 (6th Cir. 1999). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state and not to the laws of the United States."  *In re Burrus*, 136 U.S. 586, 593-94 (1890); *see Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005); *Partridge v. Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003) ("Federal courts have no jurisdiction to resolve domestic relations disputes involving child custody or divorce."); *Danforth v. Celebrezze*, 76 F. App'x  615, 616 (6th Cir.  2004) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is

actually concerned with domestic relations issues."). The Supreme Court has consistently reaffirmed the longstanding doctrine that the federal courts lack power to issue divorce, alimony and child-custody decrees. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703-07 (1992). Consequently, this court is powerless to address questions relating to the appropriate custody or visitation rights regarding plaintiff's children.

Further, the court lacks jurisdiction over any claim by plaintiff that she suffered injuries resulting from the decisions made by Michigan's courts in child custody proceedings. This court does not possess direct oversight powers over Michigan's courts. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009); *Raymond v. Moyer*, 501 F.3d 548, 550-51 (6th Cir. 2007); *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003). The recourse available to plaintiff in response to an adverse decision of a state trial court is an appeal to the Michigan Court of Appeals, an application for leave to appeal to the Michigan Supreme Court, and if necessary, a writ of *certiorari* from the United States Supreme Court. This court lacks jurisdiction to review directly the state-court custody or parental-rights decisions plaintiff is attempting to challenge through this lawsuit. *See District of Columbia Circuit Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *accord Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Lawrence v. Welch*, 531 F.3d 364, 368-69 (6th Cir. 2008).

I recommend that plaintiff's complaint against all defendants be dismissed for lack of subject matter jurisdiction, to the extent that plaintiff seeks any interference with or modification of the order of the state courts regarding custody.

## II.   Alternative Grounds for Dismissal of Plaintiff's Lawsuit

Moving beyond the question of child custody, I find that plaintiff's complaint fails to allege a viable claim against any defendant.

### A.   Mootness

Plaintiff's claims for injunctive relief against defendants (docket # 1, ¶ 367) are moot. *See, e.g.*, *Cardinal v. Metrish*, No. 08-1562, __ F.3d __, 2009 WL 1098759, at * 2 (6th Cir. Apr. 24, 2009).   Her complaint proposes a decade-long federal oversight of Michigan's day-to-day operation of the Kalkaska County Department of Human Services.   Plaintiff's claims against defendants cannot support such relief.   Jennifer McGhan, Christopher Bonds, and their children do not reside in Michigan.   Christopher Bonds and the children currently reside in Ohio.   Plaintiff's current address is in St. Mary's, Georgia.[3]   (docket # 46 at 11).   The Kalkaska County Department of Human Services is not responsible for any ongoing monitoring of the health and welfare of these non-resident children and the Kalkaska County Circuit Court proceedings related to S. N. Bonds and J. L. Bonds have long since concluded.   There is no reasonable possibility that either the Kalkaska Circuit Court or the county Department of Human Services will be in a position to inflict future harm on plaintiff.   *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).   Accordingly, I find that plaintiff's claims for injunctive relief against defendants are moot.

---

[3] Other documents filed by plaintiff describe her unsuccessful efforts to litigate the issue of custody in Emmett County Circuit Court in Michigan and various other courts in Georgia and Ohio. (*See e.g.*, docket # 36 at 5-9).

B.      Eleventh Amendment Immunity

Eleventh Amendment immunity bars plaintiff's claims against the four state-employee defendants (Judge Buday, Referee Holston, Mindy Czinder, Kris Lagois) in their official capacities, and all claims against the Kalkaska Department of Human Services which is a department of state government.   The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.[4]  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004)); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986).

The Kalkaska County Circuit Court is part of Michigan's one court of justice and is entitled to Eleventh Amendment immunity. *See* MICH. CONST. 1963, art. 6 § 1; *see Abick*, 803 F.2d at 877; *see also Nicklay v. Eaton County Circuit Court*, No. 1:08-cv-211, 2008 WL 2139613, at * 4 (W.D. Mich. May 20, 2008)(collecting cases); *accord Alkire v. Irving*, 305 F.3d 456, 467 (6th Cir. 2002).  Judge Buday and Referee Holston were sued in their official capacities.  A suit against a state officer in his official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th

---

[4] The well-recognized exception to the general rule of Eleventh Amendment immunity is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974).  The "entire basis for the doctrine of *Young* and *Edelman* disappears" when "a plaintiff alleges that a state official has violated state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "[B]ecause the purposes of *Ex Parte Young* do not apply to a lawsuit designed to bring a State into compliance with *state law*, the State's constitutional immunity from suit prohibits  all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005)(*en banc*).

Cir. 2008). All plaintiffs' claims for monetary damages against Judges Buday and Referee Holson in their official capacities are barred by the Eleventh Amendment. 491 U.S. at 70-71; *see Livingston v. Francis*, No. 09-10357, 2009 WL 818133, at * 3 (E. D. Mich. Mar. 26, 2009).

The Michigan Department of Human Services, formerly known as the Family Independence Agency,[5] is a department of Michigan government. MICH. COMP. LAWS § 400.1. The inclusion of the name of a county, as in "Kalkaska County Department of Human Services," simply identifies the local division of the state's department -- the employees at the local division are nevertheless state employees. *See Thomas v. Michigan Family Independence Agency*, 67 F. App'x 908 (6th Cir. 2003)*; Davis v. St. Joseph County Dep't of Human Servs.*, No. 1:08-cv-16, 2009 WL 782313, at * 3 (W. D. Mich. Mar. 19. 2009). The Sixth Circuit has emphasized that, "the most important factor bearing on the Eleventh Amendment question is who would pay a judgment against the entity being sued." *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir. 2004). Any judgment entered against the Kalkaska County Department of Human Services would be paid from the State's treasury. MICH. COMP. LAWS § 18.1396; *see Parker v. State*, Nos. 234828, 234829, 234830, 2004 WL 435395, at * 1 (Mich. Ct. App. Mar. 9, 2004) (affirming judgment of the Michigan Court of Claims); *Pope v. Family Independence Agency*, No. 205898, 1999 WL 33437824 (Mich. Ct. App. Aug.17, 1999) (same). As previously indicated, a suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Thus, plaintiff's claims for monetary damages against

---

[5] Governor Jennifer Granholm's executive order 2005-6 changed the department's name, effective March 15, 2005.

defendants Czinder and Lagois in their official capacities are barred by the Eleventh Amendment immunity.[6]

Plaintiff's claims against the Kalkaska County Department of Human Services fail on a separate and independent ground. States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

C. Judicial and Quasi-judicial Immunity

Judge Buday is entitled to absolute judicial immunity. State judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction. *See Pierson v. Ray*, 386 U.S. 547 (1967); *Alkire v. Irving*, 305 F.3d 456, 469 (6th Cir. 2002); *Livingston v. Francis*, No. 09-10357, 2009 WL 818133, at * 3 (E.D. Mich. Mar. 26, 2009). A claim that the state court judge acted "maliciously or corruptly" and in excess of his jurisdiction is insufficient to overcome judicial immunity. *See Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001).

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court explained: "If judges were

---

[6]The four state employees, defendants Buday, Holston, Czinder and Lagois, and the Kalkaska County Department of Human Services are also immune from liability under state law on plaintiff's tort claims. *See* MICH. COMP. LAWS 691.1407; *see also Yee v. Michigan Supreme Court*, No. 06-cv-15142, 2007 WL 118931, at * 2 (E.D. Mich. Jan. 10, 2007). Although plaintiff has alleged the legal conclusion of "gross negligence" in an attempt to avoid state-law immunity, she has not alleged facts sufficient to establish gross negligence by any defendant. MICH. COMP. LAWS § 691.1407(2)(c), (7)(a); *see Iqbal*, 2009 WL 1361536, at * 12-13; *Xu v. Gay*, 668 N.W.2d 166, 170 (2003); *accord Broder v. Correctional Med. Servs.*, No. 03-75106, 2008 WL 704229, at * 11 (E.D. Mich. Mar. 14, 2008).

personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.... Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226-27, 108 S. Ct. 538, 98 L.Ed.2d 555 (1988).

*Stern v. Mascio*, 262 F.3d at 606.

The Supreme Court has made it clear that absolute judicial immunity is overcome "in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge is not immune for non-judicial actions, *i.e.*, actions not taken in a judicial capacity. *Id.* Second, a judge is not immune for actions, although judicial in nature, done in complete absence of all jurisdiction. *Id.* In determining whether certain conduct is judicial in nature, the court must adopt a functional approach, asking whether the act is one normally performed by a judge. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997). The challenged actions of Judge Buday were clearly judicial in nature. Plaintiff argues that Judge Buday acted "in clear absence of jurisdiction." (Plf. Brief at 5-9, docket # 32). Her argument is meritless. Michigan's circuit courts are courts of general jurisdiction and can decide matters of child custody. *See Callahan v. Simmons*, No. 93-2024, 1995 WL 75418, at *2 (6th Cir. Feb. 23, 1995)(citing MICH. COMP. LAWS § 600.151). State law provides Michigan judges with temporary emergency jurisdiction where a child is present in the state in order to protect the child from actual or threatened mistreatment or abuse. MICH. COMP. LAWS § 722.1204(1); *see Breneman v. Breneman*, 284 N.W.2d 804, 807 (Mich. Ct. App. 1979). Judge Lynne Buday is entitled to absolute immunity. Referee Mark Holston is likewise entitled to judicial immunity. Michigan referees act in an adjudicative capacity.

-20-

*See O'Donnell v. Brown*, 335 F. Supp. 2d 787, 826-27 (W.D. Mich. 2004) (referee was entitled to absolute immunity related to the decisions made regarding the removal of children because those decisions were a judicial function); *see also Gould v. Suffety*, No. 07-11235, 2007 WL 1599716, at * 3 (E.D. Mich. June 4, 2007); *Palmer v. Buscemi*, No. 05-cv-10094, 2006 WL 4837480, at * 4 (E.D. Mich. Jan. 20, 2006).

Guardian ad litem Peter Shumar is entitled to absolute immunity.  The guardian ad litem's position as a court-appointed advocate for the best interests of a child "clearly places him squarely within the judicial process to accomplish that goal.  A guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents.[7]  Consequently a grant of absolute immunity [is] appropriate.  A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings." *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *see also Moss v. Tennessee Dep't of Human Servs.*, No. CIV 2:07-12, 2008 WL 4552421, at * 13 (M.D. Tenn. Oct.  7, 2008); *Chee v. Washtenaw County, Mich.*, No. 08-cv-11416, 2008 WL 2415374, at * 4 (E.D. Mich. June 12, 2008).

The Sixth Circuit has repeatedly held that social workers are absolutely immune for actions that are "intimately associated" with the judicial phase of proceedings relating to the welfare

---

[7] Defendant Shumar may also be entitled to the protection of statutory immunity on state law claims.  "A guardian ad litem is immune from civil liability for any injury to a person or property is he or she is acting within the scope of his or her authority as guardian ad litem." Mich. Comp. Laws § 691.1407(6).  Plaintiff argues that defendant's representation of the children as guardian ad litem was deficient because he didn't "do anything" other than file his appearance in state court. (Plf. Brief at 6, docket # 46).  The children may or may not have claims against the guardian ad litem under state law.  What is clear, however, is that no such claims are currently before this court. Jennifer McGhan cannot represent S. N. Bonds or J. L. Bonds.  28 U.S.C. § 1654.  Defendant Shumar never represented Jennifer McGhan.

of the child. *See Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001); *Sayler v. Patrick*, 874 F.2d 374, 377-78 (6th Cir.1989). Quasi-judicial immunity bars any claim against Ms. Czinder based upon her function of advising the court regarding the best interests of the child, even if she was incorrect in her assessment. *See Rippy*, 270 F.3d at 422; *Hughes v. Long*, 242 F.3d 121, 126-27 (3d Cir. 2001); *see also Palmer v. Buscemi*, No. 05-10094, 2007 WL 2903203, at * 5 (E.D. Mich. Sept. 30, 2007); *Robinson v. Ingham County Family Independence Agency*, No. 1:05-cv-436, 2005 WL 1907526, *4 (W.D. Mich. Aug. 10, 2005).

Plaintiff's allegations against Supervisor Lagois fail to state a claim. Liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory. *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

### D.   Prosecutorial Immunity

Defendant Czinder is entitled to prosecutorial immunity. "Social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity." *Rippy*, 270 F.3d at 421; *see Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir.1989); *see also Meyers v. Franklin County Court of Common Pleas*, 81 F. App'x 49, 53-54 (6th Cir. 2003).

### E.   Testimonial Immunity

Plaintiff objects to the testimony Caseworker Czinder gave in state court. The Supreme Court has recognized that testifying witnesses are entitled to absolute witness immunity. *See Briscoe v. LaHue*, 460 U.S. 325 (1982); *accord Chee v. Hawaii*, No. 08-cv-11416, 2008 WL

4185943, at * 8 (E.D. Mich. Sept. 8, 2008).  Defendant Czinder is entitled to absolute immunity on these claims.

F.    Plaintiff's Claims against Christopher Bonds and Attorney Daryl Johnson

Plaintiff's ex-husband and his attorney are not state employees and so are not entitled to the same types of immunity available to the other defendants.  Defendants Bonds and Johnson do not have official capacities.  Plaintiff seeks to have these defendants held individually liable for monetary damages on the following claims: (1) "violations of MCR 2.114" (Count 1); (2) violations of the Uniform Child Custody Jurisdiction Enforcement Act, MICH. COMP. LAWS § 722.1101 *et seq*. (Count 2); violation of 42 U.S.C. § 1985 (Count 4); violation of 42 U.S.C. § 1983 (Count 5); "Misrepresentation and fabrication of false evidence" in violation of 42 U.S.C. §§ 1985, 1986 (Count 6); and "Conspiracy and  wrongful deprivation of custody" in violation of 42 U.S.C. § 1985 (Count 8).

No state or federal court has recognized a private cause of action for monetary damages for a violation of Michigan Court Rule  2.114.  Any "motion" for imposition of sanctions for violation of this court rule must necessarily have be made within the state-court case wherein the alleged violation occurred.  Similarly, no state or federal court has ever recognized private cause of action for monetary damages against a parent and his attorney under the provisions of Michigan's Uniform Child Custody Jurisdiction Enforcement Act.   Accordingly, Counts 1 and 2 of plaintiff's complaint fail to state a claim on which relief can be granted against defendant Bonds and Johnson.

Plaintiff's complaint fails to allege any viable federal claim against defendants Bonds and Johnson under section 1983.  Plaintiff's ex-husband and his attorney are not state actors.  In

order to assert a section 1983 claim, a plaintiff must plead that the deprivation was committed by a state employee or other person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996).  An attorney does not become a state actor by representing a client.  *See Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991).  "Attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983."  *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999).  Attorneys fulfill a private function in representing their clients and do not act as agents of the state.  *See Polk County v. Dodson*, 454 U.S. 312, 321 (1981); *see also Adam v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of law within the meaning of § 1983.").  It  is well settled that neither a litigant nor an attorney representing a party acts under color of state law merely by bringing or defending a matter before a state court or administrative body.  *See Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998); *Kelm v. Hyatt*, 44 F.3d 415, 421-22 (6th Cir. 1995).  Being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with a judge.  *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Hefley v. Bruch*, 276 F. App'x 506, 507 (7th Cir. May 2, 2008).  Allegations of joint action or conspiracy do not demonstrate that defendants acted under color of state law "and are not sufficient to survive a motion to dismiss."  *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998); *see Wallace v. Federal Judges of U.S. Dist. Ct.*, No. 07-1316, 2008 WL 786738, at * 2 (3d Cir. Mar. 26, 2008), *cert. denied*, 129 S. Ct. 416 (2008)(Mere allegations of joint action or conspiracy do not suffice, and the act of filing a pleading with a court does not "transform a private actor into an entity acting under color of

state or federal law."). Plaintiffs' claims under section 1983 against defendants Christopher Bonds and Attorney Johnson fail for want of a state actor.

Plaintiff claims that defendants Bonds and Johnson violated her rights under 42 U.S.C. §§ 1985 and 1986. Section 1985 is a provision of the Ku Klux Klan Act of 1871 and consists of three subsections. Plaintiff does not identify which of the three subsections she was attempting to assert. Section 1985(1), which prohibits conspiracies to interfere with federal officers in the performance of their duties, and the first clause of § 1985(2), which prohibits conspiracies to influence parties, witnesses, or jurors in federal court proceedings, are not applicable to this case. Plaintiff's complaint contains no factual allegations supporting such claims. *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006); *see Kush v. Rutledge*, 460 U.S. 719, 724-27 (1983)(subsection 2); *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 840 n.1 (1983)(subsection 1). Plaintiff fails to state a claim under the second clause of section 1985(2) because there are no facts in her complaint supporting a claim of a conspiracy "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any state" motivated by racial or other class-based discriminatory animus. 42 U.S.C. § 1985(2); *see Kush*, 460 U.S. at 725-26; *see also Fox*, 173 F. App'x at 376. Any claim by plaintiff under section 1985(3) fails for similar reasons. The elements of a section 1985(3) claim are well established. *See Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). In order to state a viable private conspiracy claim under section 1985(3), a plaintiff must allege a conspiracy motivated by racial or other class-based discriminatory animus. *See Griffin*, 403 U.S. at 102-03; *Kush*, 460 U.S. at 725-26; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-78 (1993); *Radvansky v. City of Olmstead Falls*, 395

F.3d 291, 314 (6th Cir. 2005); *Ruiz v. Hoffbauer*, No. 08-1257, 2009 WL 1421108, at * 4 (6th Cir. May 20, 2009).  Further, "conspiracy must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."  477 F.3d at 832.  Plaintiff's conclusory allegations of conspiracy to do not suffice.  *See Iqbal*, 2009 WL 1361536, at * 12.

Section 1986 is merely a remedial provision for conspiracies properly alleged under section 1985.  In the absence of a proper section 1985 claim, section 1986 provides no remedy.  *See Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *Radvansky*, 395 F.3d at 314-15; *see also Ruiz*, 2009 WL 1421108, at * 4.

### III.    Motion for Rule 11 Sanctions by Defendant Christopher Bonds

Defendant Christopher Bonds's motion to dismiss includes a request for imposition of sanctions against plaintiff under Rule 11 of the Federal Rules of Civil Procedure.  Notably absent from his motion is any evidence documenting his compliance with Rule 11's safe harbor provisions.  Because Christopher Bonds has not demonstrated his compliance with the mandatory safe harbor provisions of Rule 11, his motion for sanctions must be denied.  *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-11 (6th Cir. 2002); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

### Recommended Disposition

For the reasons set forth herein, I recommend that the motions to dismiss all plaintiff's claims be granted.  I further recommend that all plaintiff's claims against Attorney Daryl Johnson be dismissed on initial screening under 28 U.S.C. § 1915(e)(2) for failure to state a claim.

Finally, I recommend that Christopher Bonds's motion for sanctions be denied because he has not complied with the "safe harbor" requirements of Rule 11 of the Federal Rules of Civil Procedure.


Dated:   June 1, 2009                    /s/  Joseph G. Scoville
                                         United States Magistrate Judge

## **NOTICE TO PARTIES**

    Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).